UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:                                                                    MISCELLANEOUS ACTION

INVESTIGATION OF BAY INGRAM                                               No. 12-431

                                                                          SECTION I


# ORDER AND REASONS

Before the Court is a motion,[1] filed by Bay Ingram ("Ingram") and Southeast Recovery Group, LLC ("Southeast"),[2] to stay this Court's April 12, 2012 order[3] pending review by the U.S. Court of Appeals for the Fifth Circuit.[4] The United States of America (the "government") opposes the motion.[5] For the following reasons, the motion is **DENIED**.

## *BACKGROUND*

Ingram is the target of a federal grand jury investigation in the Eastern District of Louisiana. In furtherance of this investigation, and via the execution of a search warrant served on third-party Internet service provider Yahoo!, the government obtained e-mails from accounts

---

[1] R. Doc. Nos. 34 and 41.

[2] For the sake of simplicity, the Court only refers to Ingram throughout this order. The Court recognizes and underscores that arguments asserted on Ingram's behalf are also asserted on behalf of Southeast.

[3] R. Doc. No. 35.

[4] The Court's order approved the government's proposed filter team protocol for review of certain evidence, seized pursuant to a search warrant, that may be protected by attorney-client or work product privileges. A more detailed recitation of the relevant facts at issue in this matter is set forth in R. Doc. No. 35, pp. 2-6.

[5] R. Doc. No. 38.

allegedly owned by Ingram.[6] On March 30, 2012, the government moved for this Court's approval of a "filter team" protocol to review such e-mails because the government suspected that some of the documents might contain privileged information.[7] Ingram opposed the motion, arguing that the proposed filter team protocol infringed on his attorney-client and work product privileges.[8] Ingram suggested that the Court approve an alternative protocol whereby Ingram's attorneys would review the e-mails before they would be transferred to the Assistant United States Attorneys ("AUSAs") investigating the case.[9]

The government's proposed filter team protocol permitted Ingram and his attorneys to participate in directing how the government would conduct its review. Most importantly, the government's protocol provided that the Court would resolve any dispute regarding whether certain e-mails are or are not privileged before such e-mails would be transferred from the filter AUSA to the AUSAs conducting the investigation.[10]

During a telephone status conference on April 10, 2012, the Court informed Ingram's attorneys that it intended to grant the government's motion, with an order and reasons to be issued separately, because the Court had concluded that the proposed filter team protocol "show[ed] proper deference to any attorney-client or work product privileges while allowing the government's investigation to proceed."[11] Ingram's attorneys responded that Ingram would be

---

[6] *See supra* n. 4.

[7] R. Doc. No. 16, pp. 14-17. The Court summarized the proposed filter team protocol in R. Doc. No. 35, pp. 4-5.

[8] R. Doc. Nos. 19 and 27.

[9] R. Doc. No. 19, p. 3-4.

[10] R. Doc. Nos. 16, pp. 14-17 and 35, pp. 4-5.

[11] R. Doc. No. 35, p. 8.

filing a notice of appeal of the Court's decision with the Fifth Circuit after this Court issued its order.[12] Ingram's attorneys requested that the Court stay the effect of its order approving the government's filter team proposal pending appellate review.[13] The Court ordered Ingram to file a formal motion to stay and the government agreed that it would not initiate review of the seized e-mails pending this Court's resolution of the motion.[14]

In his motion to stay, Ingram argues that if his "privileged e[-]mails are disclosed before the Fifth Circuit can rule on the issue, an appeal would likely be moot."[15] Ingram contends that he "has raised a substantial legal issue and will suffer irreparable harm is his privileged communications are disclosed before the Fifth Circuit can hear his case."[16] Accordingly, he maintains that a "stay is therefore necessary to preserve [his] right to appeal the Court's order."[17] The government counters that Ingram has failed to present a substantial case on the merits and that Ingram would not be irreparably injured if his motion to stay were denied.[18]

## LAW AND ANALYSIS

In order to be entitled to a stay pending appeal, Ingram must demonstrate: (1) the likelihood of his prevailing on the merits on appeal, (2) that he is likely to suffer irreparable injury from the denial of the stay, (3) that the other parties will not be substantially harmed by

---

[12] R. Doc. No. 29. The Court entered its order regarding the government's filter team protocol on April 12, 2012. *See* R. Doc. No. 35.

[13] R. Doc. No. 29.

[14] R. Doc. No. 29.

[15] R. Doc. No. 34, p. 1.

[16] R. Doc. No. 34, p. 1.

[17] R. Doc. No. 34, p. 1.

[18] R. Doc. No. 38.

3

the granting of a stay, and (4) that granting the stay will serve the public interest. *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992) (quoting *Drummond v. Fulton Cnty. Dep't of Family & Children's Serv.*, 532 F.2d 1001, 1002 (5th Cir. 1976), *rev'd on other grounds*, 547 F.2d 835 (5th Cir. 1977)).  "While each part [of the test] must be met, the appellant 'need not always show a "probability" of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.' "  *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438-39 (5th Cir. 2001) (quoting *In re First S. Sav. Assoc.*, 820 F.2d 700, 704 (5th Cir. 1987)).

> **I.** **"Substantial Case on the Merits" and "Serious Legal Question"**

In the Fifth Circuit, one may consider a "serious legal question" to be one that will broadly impact the rights or responsibilities of individuals or governments.  *See United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983) (holding that whether Medicare and Medicaid payments could be considered federal financial assistance within the meaning of the Rehabilitation Act constituted a "serious legal question" because the decision "could have a broad impact on federal/state relations" and could open "the doors of private institutions to the probing tools of an HHS investigation").  Conversely, an issue that affects only the parties to an action is not a "serious legal question."  *See Wildmon*, 983 F.2d at 24 (holding that "[n]o such serious legal question is involved here . . . [because t]his case involves only a private contractual matter" and concluding that "the results of this dispute have no far-reaching effects or public concerns to anyone – unlike those at issue in *Baylor*"); *Weingarten Realty Investors v. Miller*,

4

661 F.3d 904, 910 (holding that "[b]ecause this is merely a private contractual matter regarding whether arbitration is required, . . . no substantial legal question is involved").

Ingram argues that this matter presents a "serious legal question" because "whether 'taint teams' are appropriate is an issue of first impression in the Fifth Circuit."[19] Ingram reminds the Court that courts in other jurisdictions, including the Sixth Circuit in *In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006), have criticized the government's use of filter teams.[20]

The Court has carefully reviewed all caselaw regarding filter teams – both in favor of and in opposition thereto – that the parties submitted when it considered the government's motion[21] and it remains intimately familiar with such arguments. The Court also notes, as it did in its previous order, that the Court's research has not revealed any Fifth Circuit cases which specifically analyzed the use of filter teams when reviewing potentially privileged documents.[22]

While the Fifth Circuit has never addressed the propriety of filter teams, several U.S. District Courts, including one in the Fifth Circuit, have approved the use of government filter teams. *See, e.g., In re Search of 5444 Westheimer Road Suite 1570, Houston, Texas, on May 4, 2006*, 2006 WL 1881370 (S.D. Tex. July 6, 2006); *see also*, *United States v. Taylor*, 2010 WL 2924414 (D. Me. July 16, 2010); *United States v. Sutton*, 2009 WL 481411 (M.D. Ga. Feb. 25, 2009); *United States v. Grant*, 2004 WL 1171258 (S.D.N.Y. May 25, 2004). Other U.S. Circuit Courts of Appeals have recognized the difficulty of treating the U.S. Attorney's office like a typical private law firm with respect to privilege matters and they have approved "Chinese Wall"

---

[19] R. Doc. No. 41, p. 1.

[20] R. Doc. No. 34, pp. 2-3.

[21] R. Doc. No. 16.

[22] R. Doc. No. 35, p. 6.

5

procedures to address these concerns. *See, e.g.*, *In re Grand Jury Subpoena of Jean Ford*, 756 F.2d 249, 254-55 (2d Cir. 1985).

Furthermore, other than underscoring that this issue is one of first impression in the Fifth Circuit and asserting that issues of privilege implicate "important social values," Ingram has not demonstrated how the Fifth Circuit's resolution of this matter will have the same rippling effect as the questions at issue in cases like *Baylor*. This Court approved a very specific, detailed, and thorough filter team protocol. The appellate court's affirmation or reversal of the procedure to be used in this case is unlikely to result in a sweeping pronouncement on the general propriety of filter teams.

Ingram fails the first prong of the four-part test. Nevertheless, even if this Court's analysis of the first prong was found to be flawed, Ingram cannot show that equity is heavily weighted in his favor. *See Arnold*, 278 F.3d at 438-39 (stating that "each part [of the four-part test] must be met").

## II. "Balance of the Equities"

The remaining three factors require that Ingram demonstrate that he is likely to suffer irreparable injury in the absence of a stay, that the government will not be substantially harmed if it is not able to pursue its investigation, and that a stay would serve the public interest. *Wildmon*, 983 F.2d at 23.

### A. Irreparable Injury to Ingram

Ingram contends that he will suffer irreparable injury if this Court's order is not stayed because "[o]nce privileged e[-]mails are disclosed, [his] appeal is essentially moot . . . [because]

[t]here is simply no way to unring the bell."[23] He also asserts that the government's procedure will immediately expose any e-mails that do not contain the identified search terms to the investigating AUSAs.

The Court recognizes the importance of the attorney-client and work product privileges in our legal system. The approved filter team protocol demonstrates respect for the asserted privileges because it incorporates several layers of safeguards that prevent anyone other than the filter attorney from reviewing the potentially privileged e-mails' contents.[24] AUSA Michael McMahon, who has been appointed to serve as the filter attorney,[25] is duty-bound to keep the contents of the potentially privileged e-mails confidential until ordered by this Court to do otherwise.[26] The Court also notes that unlike traditional paper documents, e-mails are "text searchable." Potentially privileged e-mails may be quickly and easily segregated from non-privileged e-mails, provided that the program performing the search is supplied with the necessary search terms. Ingram purportedly authored or received all of the e-mails at issue.[27]

---

[23] R. Doc. No. 34, p. 3.

[24] The Court again notes that the e-mails are in the government's possession due to the execution of a lawfully obtained search warrant because Ingram, for whatever reason, failed to produce them when ordered to do so by a federal grand jury subpoena. R. Doc. No. 35, p. 8.

[25] R. Doc. No. 35, p. 8.

[26] As set forth in this Court's order approving the filter team protocol, the Court will review, *in camera*, any disputed e-mails and resolve the conflict before such e-mails may be disclosed to the investigating AUSAs.

[27] Ingram disclaims any ownership of the e-mail account jerryaldini11@yahoo.com *See* R. Doc. No. 35, p. 1. Nevertheless, the Court ordered the government to utilize the proposed filter team protocol when reviewing e-mails seized from that account. *See* R. Doc. No. 35, pp. 1-2 and 9. No other Southeast representative claims ownership of the account. To the extent that these e-mails contain privileged communications, the Court notes that it permitted additional search terms to be filed with the Court with respect to jerryaldini11@yahoo.com and that, as of the date of this order, no person or entity has moved for leave to submit such search terms. *See* R. Doc. No. 35, p. 8.

Consequently, he is aware of their contents and he can identify search terms necessary to filter all of the e-mails that contain potentially privileged communications.

At the same time, Ingram has the opportunity to challenge any privilege determinations before the e-mails are disclosed to the prosecuting AUSAs. The approved protocol calls for this Court to perform an *in camera* review of any documents when the parties dispute whether an applicable privilege applies. If this Court were to rule that a document is not privileged, Ingram may attempt to employ "established mechanisms for appellate review." *See Mohawk Indus. v. Carpenter*, ___ U.S. ___, 130 S.Ct. 599, 607-08, 175 L.Ed.2d 458 (2009).

Finally, the Court agrees with the government that other remedies exist that would lessen or eliminate the harm that Ingram could suffer if privileged documents are inadvertently disclosed to the prosecuting AUSAs.[28] In *United States v. Trenk*, a U.S. District Court ordered a defendant ("Trenk") to produce documents in response to an Internal Revenue Service subpoena; Trenk claimed that some of the documents were privileged. *Trenk*, 2009 WL 1298420, at *1 (D. N.J. May 8, 2009). The court examined the eleven purportedly privileged documents *in camera*, determined that the documents were not privileged due to the crime-fraud exception, and subsequently ordered Trenk to produce the documents *Id.* Trenk appealed and moved for a stay of the U.S. District Court's order to produce the documents pending appellate review, arguing that he would "suffer irreparable harm because the harm – disclosure of the privileged information – [could] not be undone." *Id.* at *5. The U.S. District Court declined to stay the effect of its order, stating that "there are measures that can be implemented to lessen the harm, such as return or destruction of the documents." *Id.* Likewise, this Court finds that such

---

[28] R. Doc. No. 38, p. 6 (citing *United States v. Trenk*, 2009 WL 1298420, at *5 (D. N.J. May 8, 2009)).

measures would be appropriate remedies in this case if privileged documents are inadvertently disclosed to the prosecution team. Ingram has not demonstrated that declining to stay the Court's order would irreparably harm him.

### B. Substantial Harm to the Government

The next factor inquires whether other parties – in this case, the government – would suffer substantial harm if this Court were to stay its order. First, Ingram asserts that the government will suffer no injury if a stay were granted because the e-mails are preserved and may be reviewed after the Fifth Circuit hears Ingram's appeal.[29] Second, Ingram argues that the government has demonstrated that there is no need to move expeditiously in its investigation because the government waited two months after Yahoo! produced the e-mails before it moved for approval of its filter team protocol. The government responds that Ingram has been under investigation for many months, that it had to seek a search warrant after Ingram refused to comply with the grand jury's subpoenas, and that a stay would further delay the grand jury.[30]

As it proceeded with its investigation of Ingram in 2011, the grand jury issued subpoenas to Ingram in his official and personal capacities "on multiple occasions."[31] These subpoenas ordered Ingram to produce several types of documents, including "[c]orrespondence (electronic or written)."[32] Ingram produced some e-mails in response to the subpoenas. However the government doubted that Ingram produced all relevant e-mails.[33] Accordingly, on December 21,

---

[29] R. Doc. No. 34, p. 3.

[30] R. Doc. No. 38, pp. 7-8.

[31] R. Doc. No. 24, p. 2.

[32] R. Doc. No. 1-1, p. 14.

[33] R. Doc. No. 24, p. 2.

9

2011, the government obtained a search warrant from U.S. Magistrate Judge Daniel E. Knowles, III.[34] The warrant directed Yahoo! Inc. ("Yahoo"), the third-party provider servicing the accounts bayingram@yahoo.com and jerryaldini11@yahoo.com, to produce certain data from the relevant e-mail accounts.[35]

Yahoo! finished producing the e-mails from bayingram@yahoo.com and jerryaldini11@yahoo.com on February 2, 2012.[36] Shortly thereafter, Ingram moved to quash five grand jury subpoenas issued to himself in his personal and corporate capacities, his wife in her personal and corporate capacities, and his accountant.[37] These subpoenas instructed the persons served to deliver copies of any relevant communications, including e-mails, to the grand jury. After a telephone status conference with the Court and Ingram's attorneys, the government agreed to delay its investigation, and it extended the return date on the subpoenas, until the Court ruled on the motions.[38] The Court denied Ingram's motions and the government timely moved to employ a filter team.[39]

Other U.S. District Courts have recognized that a stay may be injurious to the government where a stay would delay an ongoing investigation. *See, e.g., In re Search of Rayburn House Office Rm. #2113*, 434 F.Supp.2d 3, 4 (D. D.C. 2006). The government has been

---

[34] R. Doc. No. 24, p. 1.

[35] The warrant authorized the seizure of "All email," "Histories," "Buddy lists," "Profiles," "Subscriber information," "Method(s) of payment," and "Detailed billings records (log on and log off times)" covering a two-year period. R. Doc. No. 16, pp. 10-11.

[36] R. Doc. No. 35, p. 4.

[37] *In re Investigation of Bay Ingram*, Misc. Action No. 12-392, R. Doc. No. 1; *In re Investigation of Bay Ingram*, Misc. Action No. 12-431, R. Doc. Nos. 1-5.

[38] Misc. Action No. 12-392, R. Doc. No. 2.

[39] R. Doc. No. 16.

investigating the allegedly fraudulent invoices that Southeast submitted to BP since early 2011.[40]
Staying this matter would yet again delay the grand jury's investigation. The Court finds that
Ingram fails to satisfy the third prong of the previously enumerated test.

### C. The Public Interest

With respect to this final factor, the Court finds that the effect of granting a stay is neutral at best. *See Trenk*, 2009 WL 1298420, at *6 (stating that the public interest factor was neutral because "[t]here is a public interest in upholding the attorney-client privilege, but there is also a public interest in the 'timely assessment of tax liabilities and enforcement of tax laws' "). Similarly, the Court recognizes the importance of the attorney-client and work product privileges, but the government also has a duty to enforce the criminal laws of the United States – a duty that the investigating AUSAs in this matter have performed in a very respectful manner. The Court heeds the Fifth Circuit's words in declining to grant a stay in *Beverly v. United States*, 468 F.2d 732, 740 n.13 (5th Cir. 1972), wherein the court stated that it was "particularly mindful that the grant of a stay would be contrary to the public interest in the orderly investigation of criminal activities by a federal grand jury."

## *CONCLUSION*

Ingram has not established all four factors necessary to stay this Court's April 12, 2012 order approving the government's proposed filter team protocol. *See Arnold*, 278 F.3d at 438-39 (stating that "each part [of the four-part test] must be met").

Accordingly,

**IT IS ORDERED** that the motion to stay is **DENIED**.

---

[40] R. Doc. No. 35, p. 3.

**IT IS FURTHER ORDERED** that this order be **SEALED**.

**IT IS FURTHER ORDERED** that the Clerk's Office shall serve copies of this order on Lance Unglesby, Shaun Clarke and David Isaak, counsel for Ingram, and Assistant U.S. Attorneys Matthew Chester and Eileen Gleason, counsel for the government.

New Orleans, Louisiana, April 30, 2012.

                                              **LANCE M. AFRICK**
                                 **UNITED STATES DISTRICT JUDGE**